1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

11

EASTERN DISTRICT OF CALIFORNIA

12
13

JOSE AMEZCUA NAVA ,

No. 1:15-cv-01707-LJO-SKO HC

14

Petitioner,

15

v.

16
17

CARL WOFFORD, Warden, Avenal State
Prison, California,

**FINDINGS AND RECOMMENDATION
THAT THE COURT DENY PETITION
FOR WRIT OF HABEAS CORPUS**

18

Respondent.

**(Doc. 1)**

19
20

      Petitioner, Jose Amezcua Nava, is a state prisoner proceeding through counsel with a

21

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises three

22

ineffective assistance of counsel claims and a due process claim for habeas relief: (1) counsel

23
24

failed to introduce alibi evidence; (2) counsel failed to present evidence of Petitioner's good

25

character; (3) counsel failed to introduce evidence of Petitioner's brother-in-law's lewd acts

26

against the victim's sister; and (4) introduction of bad act evidence violated Petitioner's due

27

process rights.  Petitioner asks the Court to hold an evidentiary hearing on his ineffective

28

1

assistance of counsel claims. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny the request for an evidentiary hearing and deny habeas relief.

## I.    Procedural and Factual Background[1]

In 2011, Petitioner's 10 year old niece (the "victim") would often play at his house, swim in his pool, and Petitioner's 28 year old daughter, Jesse, would help the victim with her homework. Jesse is Petitioner's daughter and the victim's cousin.

The victim stayed at Petitioner's house from Friday, July 22, 2011, to Sunday, July 24, 2011. Jesse and the victim slept together in Jesse's room on Friday, July 22, 2011. Early Saturday morning, July 23, 2011, Jesse woke the victim up and asked her to get milk from a refrigerator located in a detached garage. The milk was for a baby that was staying at the house.[2] The victim went to the garage alone. Petitioner was in the garage and appeared to be fixing something.

The victim asked Petitioner if he would help her get milk from the refrigerator. Petitioner opened the door to the refrigerator and the victim looked for the milk. While the victim was standing in front of the refrigerator with Petitioner behind her, Petitioner put his hand up the victim's shirt and squeezed her breasts. Petitioner left one hand on the victim's breasts, and put his other hand inside her shorts and underwear and squeezed her vagina. The victim told Petitioner he was hurting her and told him to leave her alone. Petitioner stopped, but told the victim that if she told her mom or dad, they would hit her, and if she told her aunt, Petitioner's wife, her aunt would kick Petitioner out of the house. The victim ran back into the house and did

---

[1] Factual information derived from *People v. Nava*, (Cal. App. Aug. 12, 2014) (No. F065082), and review of the record.
[2] The record does not indicate whose baby was at the house at the time of the events.

not see Petitioner until later on Saturday evening.

On Sunday, the victim walked back to her own house, which was near Petitioner's house. Two days later, the victim told her mother, A.B., about the incident with Petitioner. A.B. is Petitioner's sister. A.B. went to Petitioner's house to speak with him about the incident in the garage. Jesse, Petitioner's daughter, who was at Petitioner's house, threated that if A.B. called the police, the victim would be taken away from A.B. and A.B. would be deported.

A.B. did not call the police, but Child Protective Services and the police became involved and investigated the incident.[3] Sheriff's Deputies Lionel Alvarez ("Deputy Alvarez") and Rod Schulman ("Deputy Schulman") interviewed the victim on July 27, 2011.

On August 23, 2011, Petitioner was charged with one count of committing a lewd and lascivious act on a child under the age of 14 (Cal. Penal Code. § 288(a)).

On August 24, 2011, social service practitioner Delia Acosta-Perez interviewed the victim. The video recording of the interview was played for the jury at trial. During the interview, the victim described, both verbally and with hand motions, how Petitioner had touched her on each of the three days she stayed at his house over the weekend of July 22, 2011.[4] At trial, the victim testified that one night during the same weekend, Petitioner locked a door for a room and touched her while she was sitting on a couch. The victim further testified that Petitioner touched her in a similar manner on several other occasions during the summer of 2011. Petitioner was not, however, charged for these incidents.

Petitioner's trial began on March 26, 2012, and concluded on March 29, 2012.

At trial, M.N., one of Petitioner's sisters, testified that when she was nine or ten years old, in 1969, Petitioner put his finger inside her vagina, which caused her pain. M.N. told her mother what happened and it never happened again. M.N. could not remember much about the

---

[3] The record does not indicate how or who contacted the police and Child Protective Services.
[4] The record does not reflect the reasons why Petitioner was only charged for the incident on July 23, 2011.

incident, but believed it occurred in the bathroom of the house. However, she had previously told Deputy Schulman that the incident had occurred in a bedroom. Petitioner denied his sister's allegations that he molested her.

Petitioner testified at trial and denied he molested the victim on Saturday morning. Petitioner stated that the only time he was in the garage with the victim was on the evening of July 22, 2011, when Petitioner went to the garage refrigerator to bring in a cake. Petitioner stated that on Friday night he had over 15 guests in his house for a church celebration. He and his wife went to the garage and were followed by the victim. Petitioner handed the victim the cake from the garage refrigerator. Petitioner maintained that he was not alone in the garage with the victim and after getting the cake, the victim, Petitioner's wife, and Petitioner went back into the house.

Petitioner testified that on Saturday morning, he and his wife left their house at 4:00 a.m. to visit their son in prison in Tehachapi. The drive took approximately one hour and 45 minutes. Petitioner stated that he did not speak to the victim before leaving the house. Petitioner testified that he saw the victim on Saturday evening and briefly on Sunday morning, but was never alone with her.

Jesse testified at trial and stated that on Friday the victim went to the garage refrigerator with Petitioner and his wife and carried the cake back into the house. Jesse maintained that the victim slept with her on Friday night. Jesse testified that Petitioner and his wife left the house around 4:00 a.m. on Saturday morning and the victim was with Jesse for the entire day. Jesse denied sending the victim to the garage to get milk on Saturday morning. Jessie claimed that the victim was with her the entire weekend.

Stephanie Estrada ("Ms. Estrada"), who knew Petitioner for approximately 25 years, testified at trial as a character witness for Petitioner. Ms. Estrada stated that Petitioner was an

4

honest, God-fearing, and loving individual who cared for his community.  She testified that Petitioner had an excellent reputation with the way he treated women and children.

The jury found Petitioner guilty of committing a lewd and lascivious act on a child under the age of 14 on March 29, 2012.  On April 27, 2012, Petitioner was sentenced to six years in prison.

On June 1, 2012, Petitioner filed an appeal with the California Fifth Appellate District Court of Appeal.  On October 11, 2013, while his direct appeal was still pending, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal.  On August 12, 2014, the Court of Appeal issued a single opinion affirming the judgment of the trial court and denying the habeas petition.[5]  On September 23, 2014, Petitioner filed a petition for review with the California Supreme Court, which was summarily denied on November 12, 1014.

On November 9, 2015, Petitioner filed a petition for habeas corpus with this Court. Petitioner raises three ineffective assistance of counsel claims and a due process claim for habeas relief: (1) counsel failed to introduce alibi evidence; (2) counsel failed to present evidence of Petitioner's good character; (3) counsel failed to introduce evidence of Petitioner's brother-in-law's lewd acts against the victim's sister; and (4) introduction of bad act evidence violated Petitioner's due process rights.

## II.    Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521

---

[5] The relevant sections of the Court of Appeal opinion are discussed further herein.

U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state

6

court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner contends that his rights were violated because his trial counsel failed to (1) introduce alibi evidence; (2) present character evidence of Petitioner's good conduct; and (3) introduce evidence of Petitioner's brother-in-law's lewd acts against the victim's sister. The Court will address each claim in turn.

Petitioner raised these ineffective assistance of counsel claims in his state habeas petition. Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991). The last reasoned opinion for each of these issues was that of the Court of Appeal.

### a. Standard of Review for Ineffective Assistance of Counsel Claims

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient; and (2) prejudice as a result of such deficient performance. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

Establishing that a state court's application of *Strickland* was unreasonable under § 2254 is difficult because the standards under *Strickland* and § 2254 are both "highly deferential." *Harrington*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). "[W]hen the two apply in tandem, review is 'doubly' so." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In the habeas context, under § 2254, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### b. **State Court of Appeal's Standard of Review for Ineffective Assistance of Counsel Claims**

The Court must first determine whether the state court decision was contrary to clearly established federal law, as set forth in *Strickland* for ineffective assistance of counsel claims. 28 U.S.C. § 2254(d). The state court has adjudicated a federal constitutional claim if it cites directly

8

to federal authority or cases which rested on federal authority. *Baker v. Blaine*, 221 F.3d 1108, 1112 (9th Cir. 2000).

The state court of appeal applied the following legal standard to Petitioner's ineffective assistance of counsel claims:

> The [petitioner] has the burden of proving ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, the [petitioner] must establish not only deficient performance, which is performance below an objective standard of reasonableness, but also prejudice. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Tactical errors generally are not deemed reversible. (*People v. Maury* (2003) 30 Cal. 4th 342, 389.)

> Counsel's decision making is evaluated in the context of the available facts. To the extent the record fails to disclose why counsel acted or failed to act in the manner challenged, appellate courts will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or, unless there simply could be no satisfactory explanation. (*Maury*, *supra*, 30 Cal. 4th at p. 389.)

> Prejudice must be affirmatively proved. The record must affirmatively demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Maury*, *supra*, 30 Cal. 4th at p. 389.) Attorneys are not expected to engage in tactics or to file motions that are futile. (*Id*. at p. 390; *see also People v. Mendoza* (2000) 24 Cal. 4th 130, 136.)

*People v. Nava*, (Cal. App. Aug. 12, 2014) (No. F065082), at 27-28.

The Court of Appeal did not cite to *Strickland*; however, both of the cases to which the Court of Appeal cited in its opinion, *Maury* and *Mendoza*, cited to *Strickland*. *See Maury*, 30 Cal 4th at 389; Mendoza, 24 Cal 4th at 158. Further, the Court of Appeal decision correctly applied *Strickland*'s two part framework by stating that Petitioner had the burden to prove: (1) deficient performance by counsel, and (2) prejudice. *Nava*, (No. F065082), at 27. Similarly, *Strickland* places the burden on Petitioner to show: (1) counsel's representation was deficient; and (2) prejudice as a result of such deficient performance.

Therefore, the Court of Appeal's decision is "in accord with [the] decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the [ ]

9

[C]ourt . . . might reach a different result applying the *Strickland* framework itself." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). Thus, the question for the Court is whether the Court of Appeal's decision involved an unreasonable application of *Strickland*.

### c. **Counsel's Failure to Introduce Alibi Evidence**

Petitioner states that he could not have molested the victim because on Saturday, July 23, 2011, Petitioner and his wife left their house at 4:00 a.m. to visit their son in prison. (Doc. 1 at 25.) Petitioner contends that his trial counsel was ineffective, because counsel did not investigate, nor provide evidence of Petitioner's alibi – records of Petitioner's visit to his son. *Id.* at 24. Respondent counters that the Court of Appeal's rejection of this claim was reasonable, because the alibi evidence did not rebut the prosecution's evidence about when the molestation occurred. (Doc. 9 at 14.) Specifically, the molestation could have occurred before Petitioner left the house. *Id.*

### i. **State Court of Appeal Opinion**

The Court of Appeal found that the record "discloses a reasonable explanation for counsel's alleged omission." Trial counsel

> explained he verified the prison visit with [Petitioner], [Petitioner's] wife, and Jesse. "The victim however testified that this happened early before he departed to visit the son." [Trial] counsel further noted [Petitioner's] wife "could have been a good witness but had an emotional meltdown suddenly just before [counsel] wanted to call her to the stand and had to be taken to the hospital. Later at sentencing she was back to normal."

> On cross-examination, [trial] counsel elicited testimony from the victim that, to the best of her recollection, the molestation occurred early in the morning on Saturday, July 23, 2011, after Jesse woke her up to get milk from the refrigerator in the garage. [Trial] counsel's clarification of the timing of the alleged incident demonstrates why presenting further corroborating evidence of [Petitioner's] alibi would not have been particularly helpful to the defense and therefore counsel was not deficient for failing to develop it. The prosecution did not dispute that [Petitioner] and his wife visited their son in prison but posited the theory that if the molestation occurred Saturday morning as the victim recalled, then it must

have occurred before [Petitioner] and his wife left to visit their son.[6]

These circumstances also demonstrate the absence of prejudice. As the prosecution did not dispute the prison trip occurred, [Petitioner's] theory that the jury in this case would [not] have expected him to present prison records to prove the trip and likely rejected his alibi defense based on his failure to do so.

*Nava*, (No. F065082), at 28-29.

### ii. The State Court of Appeal Did Not Err in Rejecting Petitioner's Alibi Claim.

Petitioner argues that trial counsel should have investigated and presented evidence of Petitioner's alibi through prison visitation records. (Doc. 1 at 24.) Petitioner states that the record of his prison visit would corroborate his alibi, because the victim testified that Petitioner molested her on the day Petitioner was at prison visiting his son. *Id*. at 25.

Counsel for Petitioner stated that he verified the fact that Petitioner and his wife drove to the prison on the morning of Saturday, July 23, 2011, with Petitioner, his wife, their son, and their daughter, Jessie. (Lodged Doc. 4 at 10.) However, counsel noted that the victim testified that the molestation occurred *before* Petitioner left the house to visit his son. *Id*. At trial, Petitioner and his daughter, Jessie, testified that Petitioner and his wife left their house at 4:00 a.m. on July 23, 2011. (Doc. 1 at 25.) Petitioner's attorney wanted to call Petitioner's wife to testify about that morning; however, Petitioner's wife had "an emotional meltdown suddenly just before [counsel] wanted to call her to the stand and had to be taken to the hospital." (Lodged Doc. 4 at 10.)

---

[6] The Court of Appeal included a footnote in the opinion, noting:

[f]or example, the prosecutor argued: 'We heard that the [Petitioner] left at 4:00 a.m. If Jesse's got a baby in that house early in the morning, doesn't it make sense that she asked for milk? Doesn't it make sense [the victim] was already up? . . . So if the [Petitioner's] up at 4:00 a.m. getting ready [to] go to Tehachapi to see his son in prison, then [the victim] was awake. So you can believe it happened Saturday morning because they were both there. There's an opportunity there. Both there, they're both awake, they're moving around the house. . . .'

*Nava*, (No. F065082), at 28-29.

Under *Strickland*, the Court must determine whether counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. The Ninth Circuit has held that "a lawyer who fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Avila v. Galaza*, 297 F.3d 911, 919 (9th Cir. 2002) (quoting *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) (holding that counsel's failure to review key documents corroborating defense witness's testimony constituted deficient performance) (internal quotation marks omitted)).

In this case, the Court of Appeal noted that while counsel could have presented evidence that Petitioner was at the jail visiting his son on July 23, 2011, the prosecutor never disputed this fact. Instead, the prosecutor "posited the theory that if the molestation occurred Saturday morning as the victim recalled, then it must have occurred before [Petitioner] and his wife left to visit their son." *Nava*, (No. F065082), at 28. The Court of Appeal determined that, based on the prosecutor's position, producing prison records that confirmed Petitioner visited his son on July 23, 2011, would not have strengthened his alibi. *Id.* The jury could have believed that Petitioner molested the victim that morning and then left to visit his son in prison; therefore, given the facts of the case, counsel's decision not to introduce the prison records was not unreasonable. Consequently, the Court of Appeal's determination that counsel was not ineffective did not involve an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d)(1).

Petitioner contends that the victim's testimony that the crime occurred before 4:00 a.m. is not reliable because the victim "would not have referred to a crime that occurred before 4 am as having occurred in the 'morning.'" (Doc. 1 at 32.) Further, the Petitioner contends that "the

record of the 7:00 a.m. prison visit would still have been evidence that drastically limited the time available to commit the offense 'in the morning.'" *Id*. While Petitioner disagrees with counsel's decision to not present the prison visitation records, the Court of Appeal's decision was not unreasonable given the facts presented at trial. As long as fair-minded jurists could disagree on the correctness of the state court's determination that a claim lacks merit, a federal court cannot provide habeas relief. *Harrington*, 562 U.S. at 101; *Yarborough*, 541 U.S. at 664.

Petitioner cites to *In re Marquez*, 1 Cal. 4th 584 (1992), and *Montgomery v. Peterson*, 846 F.2d 407 (7th Cir. 1988), for the proposition that counsel was ineffective for failing to present the prison visitation record. (Doc. 1 at 26.)

In *Marquez*, the California Supreme Court found that counsel failed to adequately investigate whether the petitioner was in the country at the time the crime he was accused of committing occurred. *Marquez*, 1 Cal. 4th at 597. *Marquez* is distinguishable from the instant case because in *Marquez* witnesses that counsel did not interview prior to trial would have "greatly strengthened the alibi defense." *Id*. at 599. Here, records from the jail would have confirmed Petitioner's claim that he went to the jail, but would not have strengthened his alibi given that, the prosecutor did not deny Petitioner went to the prison, and the victim testified that the molestation occurred before he left for the jail.

In *Montgomery*, the petitioner was tried in two separate counties before two juries on charges that he committed two burglaries, one in each county, on the same day. 846 F.2d at 408. In one case, the jury found the petitioner guilty and in the other they found him not guilty. *Id*. The difference between the cases was that in the second trial, counsel called an employee from a store who testified that petitioner and his wife were at the store when prosecution witnesses stated that the petitioner was with them committing the burglaries. *Id*. at 409-11. At a hearing on the state habeas petition, counsel stated that he did not contact the potential witness from the

store due to "inadvertence" and because he did not believe his client was innocent.  *Id*. at 409-10.  The Seventh Circuit found that counsel was ineffective because there was no tactical reason for not contacting the witness, and counsel deprived petitioner of the testimony of a "disinterested alibi witness."  *Id*. at 411.

While the witness in *Montgomery* would have strengthened the petitioner's alibi, in the instant case, the visitation records would not have strengthened Petitioner's alibi.  Therefore, the Court recommends denying Petitioner's ineffective assistance of counsel claim based on counsel's failure to present alibi evidence.

### d.  Counsel's Failure to Present Evidence of Petitioner's Good Character

Petitioner contends that counsel was ineffective for not offering proof of specific instances of Petitioner's good conduct around young women.  (Doc. 1 at 33.)  Petitioner specifically argues that counsel should have presented the testimony of Arcelia Valdez, who knew Petitioner as a child.  *Id*. at 34.  Respondent counters that not presenting evidence from young women was a reasonable strategic decision because "some jurors might have wondered if Petitioner volunteered only for activities that would place him in close proximity with young girls."  (Doc. 9 at 16.)

### i.  State Court of Appeal Opinion

The Court of Appeal found that trial counsel had a "satisfactory explanation for counsel's alleged omission" of character evidence.  Trial counsel stated

> 'from a tactical standpoint given the nature of the charges, where it happened, and his active involvement in cultural dancing with young girls I did not feel that would help.'  In a case alleging the molestation of a young girl, it was not unreasonable for counsel to decide not to seek the admission of evidence calling the jury's attention to [Petitioner's] taking an interest in and participating in numerous activities bringing him in close proximity to young girls.
>
> [Petitioner] also claims defense counsel failed to call Arcelia Valdez as a character witness.  She provided a declaration in which she described her long acquaintance and frequent contact with [Petitioner].  The record, however, does

not disclose whether defense counsel even was aware of this witness.

*Nava*, (No. F065082), at 29.

### ii. The State Court of Appeal Did Not Err in Rejecting Petitioner's Good Character Evidence Claim.

Petitioner contends that counsel should have presented evidence of Petition's good character with young women. (Doc. 1 at 33-34.) Petitioner provided counsel with character evidence in the form of letters from young women that counsel chose not to present at trial. *Id*. Petitioner also argues that "[a] reasonably competent attorney would have made inquiries of the [letter] authors regarding what testimony might be available that would strengthen" the case. (Doc. 16-1 at 5.)

Counsel was aware that character witnesses were available; however, "[f]rom a tactical standpoint given the nature of the charges, where it happened, and [Petitioner's] active involvement in cultural dancing with young girls[, counsel] did not feel that would help." (Lodged Doc. 4 at 101.) The Court of Appeal found that not presenting the evidence of Petitioner's good character was not an unreasonable strategic decision. *Nava*, (No. F065082), at 29.

The Court must determine whether "in light of all the circumstances" failure to present Petitioner's character evidence was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.

Here, counsel acknowledged that character evidence was available, but made the tactical decision that evidence that Petitioner was actively involved with young girls may be detrimental to the case. There is nothing in the record to suggest that counsel did not carefully weigh his

options before making the decision to not introduce the character evidence. The Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The Court of Appeal's determination that counsel made a strategic decision was not an unreasonable application of the standard set forth in *Strickland*. *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1983) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.") (citing *Strickland*, 741 F.2d at 690).

Counsel made a strategic decision to not present character evidence at trial. This Court will not second guess counsel's strategic choice at this point. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981) (difference in opinion as to trial tactics, generally does not constitute denial of effective assistance); *Bashor v. Risely*, 730 F.2d 1228, 1241 (9th Cir. 1984) (tactical decisions do not amount to ineffective assistance simply because in retrospect better tactics are known to have been available). Accordingly, the Court of Appeal's decision rejecting Petitioner's argument that counsel was ineffective for not presenting character evidence was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

**e. Counsel's Failure to Introduce Evidence of Petitioner's Brother-In-Law's Lewd Acts**

Petitioner contends that counsel was ineffective for failing to investigate charges that were brought and later dropped against Petitioner's brother-in-law, Silvano B., for committing lewd acts against the victim's sister. (Doc. 1 at 34.) Petitioner argues counsel should have investigated evidence that there was a "prior fabricated" molestation charge made by the victim's family or prior molestation within the victim's family. *Id*. at 36. Petitioner believes this evidence would have been relevant to Petitioner's defense, because it would show that the victim's mother either encouraged the victim to make a false claim, or show that the victim was familiar with molestation. *Id*. at 36. Respondent counters that this claim is based on speculation

16

because the charges against Silvano B. were dismissed; therefore, there is little information

regarding the case, and it has no bearing on the present case.  (Doc. 9 at 18.)

### i.  State Court of Appeal Opinion

The Court of Appeal described Petitioner's contention that trial counsel:

> was ineffective for failing to investigate charges that were brought, and then later dropped, against [Petitioner's] brother-in-law, Silvano B., for committing lewd acts on the victim's sister in 1999.

> [Petitioner] asserts that 'evidence that there was a prior fabricated charge, or that there was an actual molestation, would both have been highly relevant' to his defense.  This is so, he argues, because if the victim's mother' encouraged her older daughter to lie, this would have significantly called into question her credibility.'  On the other hand, if his brother-in-law molested the victim's sister, this evidence would be relevant to show that the victim 'was familiar with certain forms of sexual assault, since her older sister had experienced what, judging by the complaint, appears to be a similar type of sexual assault at a similar age.'

> This last claim of ineffective assistance of counsel fails because [Petitioner] cannot establish prejudice.  His relevancy arguments are based entirely on speculation.  They assume the victim's mother either encouraged the victim to lie or the victim was familiar with the acts of sexual abuse allegedly inflicted on her sister over a decade before the alleged conduct in this case.  [Petitioner] presents no evidence in his writ petition, and no evidence was presented at trial, suggesting the victim's mother encouraged or coached the victim to fabricate her allegations against [Petitioner], or that the victim was familiar with any prior allegations of sexual abuse against the victim's sister.  Thus, [Petitioner] has failed to establish that investigation into charges of sexual abuse by his brother-in-law against the victim's sister would have yielded relevant evidence affecting the outcome of the proceedings.

*Nava*, (No. F065082), at 29-30.

### ii.  The State Court of Appeal Did Not Err in Rejecting Petitioner's Brother-In-Law's Lewd Acts Claim.

Petitioner maintains that counsel should have investigated the Silvano B. molestation

case to find information to impeach the victim's mother, or to show that the victim had the

knowledge to make a false molestation claim.  (Doc. 1 at 36.)  Petitioner states counsel should

have established that the victim's mother encouraged the victim to make false claims against

Petitioner.  *Id.*

Petitioner's claim is unavailing. At trial, counsel endeavored to elicit information about Petitioner's relationship with the victim's mother. Counsel asked Petitioner, "[w]as there anger between – was your sister – was one of your sisters angry at you before this accusation came out?" (Lodged Doc. 13 at 812.) After the prosecutor objected and outside the presence of the jury, counsel rephrased the question and asked Petitioner "if you didn't do what [the victim] says you did, then why would she say that you did that to her?" *Id*. at 815. Petitioner answered, "I never did anything to her." *Id*. Based on Petitioner's answer, counsel abandoned this line of questioning. *Id*. at 816. Counsel tried to elicit information from Petitioner about a possible motive for the victim to fabricate the molestation allegations, but Petitioner did not answer these questions in a way that would allow counsel to probe into Petitioner's relationship with his sister, A.B.

To satisfy the prejudice prong of the *Strickland* test, the record must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As the Court of Appeal noted, Petitioner cannot provide any evidence to show that the accusation against Silvano B. is relevant to the present case. Although Petitioner states the charges against Silvano B. were dismissed and he was not recharged, Petitioner can only speculate as to why the charges were dismissed. Petitioner states that the dismissal of charges "**suggests** that the district attorney had concluded that there was a lack of probable cause, that the complaining witness was not credible, or some other fact that would have been fatal to the prosecution." (Doc. 1 at 35.) Petitioner further speculates that the district attorney's dismissal of charges "[does] not suggest that the district attorney had sufficient evidence to prosecute Silvano B. but simply decided, out of the kindness of his heart, to give him a free ride." *Id*.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The fact that Petitioner's brother-in-law was charged with molesting the victim's sister in 1999 and the charges were subsequently dropped does not make Petitioner's claims that the victim's mom encouraged the victim to lie about the molestation or the victim was knowledgeable about molestation more probable. Because the Petitioner cannot prove the Silvano B. evidence is relevant, he cannot show with "a reasonable probability" that presenting the evidence about Silvano B. would have changed the outcome of the trial. *See Strickland*, 466 U.S. at 694. Petitioner did not establish the prejudice prong of *Strickland* based on counsel's decision to not present evidence about Silvano B. for that reason, Petitioner failed to prove both prongs of the *Strickland* test.

Petitioner relies on *In re Edward S.*, 173 Cal. App. 4th 387 (2009), for the proposition that counsel was ineffective for failing to investigate alleged molestation in the victim's family and for failing to investigate the bias of the victim's mother. (Doc. 1 at 35-36.) On cross examination, counsel in *Edward* did not question the victim, who was "a 10 year old girl, [who] apparently grew up in and around a family of three generations experiencing molest[ation]." (Doc. 1 at 35) (citing *Edward*, 173 Cal. App. 4th at 399). Petitioner also notes counsel here, like counsel in *Edward*, failed to investigate the credibility and bias of the victim's mother. *Id.*

*Edward* is distinguishable from the instant case. In *Edward*, counsel admitted "that much more should have been done in defending [the petitioner's] case. Specifically, [the] case required more resources, support from more experienced attorneys, proper investigation, sufficient investigative resources, and assistance with an extremely serious [ ] petitioner." *Edward*, 173 Cal. App. 4th at 400. Although the Court of Appeal noted that the victim came from a family where molestation was common and the mother appeared biased against the petitioner in the case, the Court of Appeal found counsel in *Edward* deficient for three reasons:

he (1) failed to investigate potentially exculpatory evidence, (2) sought an inadequate continuance based on a mistake of law, and, (3) failed to move for a substitution of counsel knowing he was unable to devote the time and resources necessary to properly defend [the petitioner].

*Id.*

In the instant case, counsel knew "a couple of others who were accused of similar conduct on other occasions[,] but the court ruled that we could not go into that." (Lodged Doc. 4 at 10.) Unlike in *Edwards*, here Petitioner does not contend that counsel made mistakes because he did not understand the law, nor that he did not have the time and resources to adequately prepare the case. Therefore, the Court of Appeal's decision rejecting Petitioner's argument that counsel was ineffective for not presenting evidence about Silvano B. was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

## IV.    The Court Recommends Denying Petitioner's Request for an Evidentiary Hearing on Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asks the Court to hold an evidentiary hearing on his ineffective assistance of counsel claims, so that counsel may be cross-examined. (Doc. 1 at 38-42.)

In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176. Here, all of Petitioner's claims can be resolved by reference to the state court record. As the Court is able to resolve all issues with reference to the state court record, it recommends denying Petitioner's request for an evidentiary hearing.

## V.    Introduction of Prior Bad Act Evidence

During the trial, the court allowed in evidence that in 1969, Petitioner molested one of his sisters (the "prior bad act evidence"). Petitioner maintains that allowing this evidence to be presented at trial violated his due process rights, because the admission of this irrelevant and

prejudicial evidence was unfair.  (Doc. 1 at 37.)  Respondent argues that because this issue was not exhausted before the California Supreme Court, it is unexhausted and cannot form the basis for habeas relief.[7]  (Doc. 9 at 20.)  However, Respondent asks the Court to deny the claim based on its merits, because Petitioner's due process rights were not violated.

### a.  Exhaustion of State Court Remedies

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  *Duncan*, 513 U.S. at 365.

The petitioner must also have specifically informed the state court that he was raising a federal constitutional claim.  *Id.* at 365-66; *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Keating v. Hood*, 133 F.3d 1240, 1241 (9th Cir. 1998).

---

[7] As set forth, *infra*, Respondent is incorrect and Petitioner did, in fact, exhaust this argument before the California Supreme Court.

### b.  Petitioner Exhausted His Claim of a Due Process Violation Based on the Admission of Prior Bad Act Evidence Before the California Supreme Court.

In the instant case, Petitioner argued before both the Court of Appeal and the California Supreme Court that the trial court abused its discretion in admitting the prior bad act evidence.  (*See* Lodged Docs. 1 at 20-38; 6 at 3-12.)  In contending that the admission of the bad act evidence was not harmless, before both courts, Petitioner cited *Chapman v. Cal.*, 386 U.S. 18 (1967).  (*See* Lodged Docs. 1 at 38; 6 at 10.)  In *Chapman*, the United States Supreme Court held that "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, . . ., be conceived of as harmless."  *Id*. at 24.  Because Petitioner presented the same arguments before the Court of Appeal and Supreme Court and Respondent admits that Petitioner exhausted the issue before the Court of Appeal, (*see* Doc. 9 at 20), the Court finds that Petitioner fully exhausted this claim.

### c.  State Court of Appeal Opinion

Petitioner's counsel filed a motion asking the trial court to exclude evidence of the 1969 uncharged sexual offense pursuant to California Evidence Code § 352.[8]  The trial court conducted a hearing, pursuant to California Evidence Code § 402,[9] heard argument and

---

[8] Cal. Evid. Code § 352:

> The Court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

[9] Cal. Evid. Code § 402:

> (a)  When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.
>
> (b)  The Court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.
>
> (c)  A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute.

determined that the evidence was admissible.  The trial court stated:

> In this case, the amount of time between the incident with [Petitioner's sister] and the new victim is 43 years.  That is very remote in time.  However, the victims were the same age, or approximately the same age when the alleged assault took place.  They were family members; [Petitioner] had a position of either trust or authority over the two victims; the acts are substantially similar; the evidence that [Petitioner's sister] . . . testified to is not particularly inflammatory; and there is very little possibility of confusion of the issues.  The . . . testimony that was elicited from [Petitioner's sister] took a very short period of time and, therefore, the amount of time involved in introducing and refuting the evidence is not lengthy.  So the court – based on viewing the [§] 352 analysis, there is propensity evidence that is highly probative to show intent and far outweighs the prejudicial effect.  [The] Court is going to allow the [§1108][10] evidence.

*Nava*, (No. F065082), at 8.

The Court of Appeal described the five factors used to evaluate the admissibility of prior offense evidence in California courts: "(1) the inflammatory nature of the evidence; (2) the probability of confusion; (3) the remoteness in time of the prior incidents; (4) the consumption of time involved; and (5) the probative value of the prior offense evidence."  *Id.* (citing *People v. Harris*, 60 Cal. App. 4th 727, 737-41 (1998)).

In analyzing the trial court's admission of the 1969 uncharged sexual offense evidence pursuant to *Harris*, the Court of Appeal determined:

> the uncharged  and charged sexual offenses were substantially similar.  Both victims were young girls, were family members and were staying in the same house as [Petitioner] at the time of the offenses.  Both offenses included touching of the victims' vaginas.  The uncharged offense against [Petitioner's] sister, which involved digital penetration of the vagina, was more inflammatory than the charged offense against the victim, but not greatly so.  The sister's testimony did not consume an undue amount of time.  And the jury was instructed properly with

---

[10] Cal. Evid. Code § 1108:

> (a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made admissible . . ., if the evidence is not inadmissible pursuant to [Cal. Evid. Code §] 352.

> (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered . . . .

CALCRIM No. 1191[11] that they could, but were not required to, consider this evidence for propensity purposes.[12]

No specific time limit is set forth in the statute and appellate courts have upheld the admission of evidence of uncharged offenses that occurred 30 years before. (*People v. Branch* (2001) 91 Cal. App. 4th 274, 285.) Remoteness is but one factor to be considered by the trial court. But 43 years is a long time, and if the sexual misconduct evidence was not similar, we likely would reach a different result. Because it is solely within the trial court's discretion to determine whether sexual misconduct evidence is too remote, and where the record demonstrates the court wrestled with the issue and exercised its discretion, we will not disturb the court's ruling.

But, even assuming the trial court erred in allowing the introduction of the 43-year-old uncharged and adjudicated sexual act, based on the evidence of the other three or more recent uncharged acts involving the victim,[13] we conclude any such error not prejudicial, under either the *Watson* or *Chapman* standards.[14] (*People v.*

---

[11] As read to the jury, Cal. Crim. Jury Instruction 1191(a) states:

The People presented evidence that the defendant committed the crime of committing a lewd and lascivious act upon a child under the age of 14 years that was not charged in this case. This crime is defined for you in these instructions.

You may consider this evidence only if the People have proved beyond a preponderance of the evidence that the defendant tin fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

If the People have not met this burden of proof, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the crime of committing a lewd and lascivious act upon a child under the age of 14 years, as charged here. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of committing a lewd and lascivious act upon a child under the age of 14 years. The People must still prove the charge beyond a reasonable doubt.

Do not consider this evidence for any other purpose except for the limited purpose of determining the defendant's credibility.

[12] In a footnote to its opinion, the Court of Appeal noted that, as read to the jury, Cal. Crim. Jury Instruction 1191(a) "was not modified to identify the 1969 prior uncharged incident specifically, so the jury also could have considered the evidence of the recent uncharged sexual misconduct involving the victim for propensity purposes." *Nava*, (No. F065082), at 9.

[13] In an interview, the victim described, both verbally and with hand motions, how Petitioner had touched her on each of the three days she stayed at his house over the weekend of July 22, 2011. At trial the victim testified that one night during the same weekend, Petitioner touched her while she was sitting on a couch in his house. The victim further testified that Petitioner touched her in a similar manner on several other occasions during the summer of 2011.

[14] The California Supreme Court held "that a 'miscarriage of justice' should be declared only when the court, . . . is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error." *People v. Watson*, 46 Cal. 2d 818, 836 (1956). In *Chapman*, the United States

*Watson* (1956) 46 Cal. 2d 818, 836; *Chapman v. California* (1967) 386 U.S. 19, 24.) We can infer from the jury's guilty verdict that they found the victim credible and not [Petitioner].

*Id*. at 8-9.

Petitioner was between 16 and 18 years old at the time of the 1969 uncharged sexual offense. The Court of Appeal determined

[i]t is not unreasonable to conclude that a defendant with a juvenile history of committing sexual abuse would be more likely to commit sexual abuse as an adult than a defendant without such history. Evidence that [Petitioner] as a teenager sexually abused his young sister was highly probative on the issue of the likelihood he would as an adult sexually abuse his young niece.

In short, there is no indication here that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner. We thus conclude the trial court did not abuse its discretion in admitting the evidence of [Petitioner's] prior sexual offense under section 1108.[15]

[Petitioner] also has forfeited his challenge to admissibility of the evidence on constitutional due process grounds. "An appellate contention that the erroneous admission or exclusion of evidence violated a constitutional right is not preserved in the absence of an objection on that ground below. [ ]." (*People v. Daniels* (2009) 176 Cal. App. 4th 304, 320, fn. 10.) No objection on the basis of a violation of constitutional rights was made by [Petitioner].

*Id*. at 10.

### d.  Admission of the Prior Bad Act Evidence Did Not Violate Petitioner's Due Process Rights.

Petitioner argues that the admission of evidence of his prior bad act violated his due process rights "[u]nder the totality of the circumstances," because "the alleged prior sexual misconduct was never investigated or reported to the police, [ ] there were [no] witnesses, and [ ] there was no corroborating evidence that it had ever occurred." (Doc. 1 at 37-38.) Further, "there was no evidence that [P]etitioner had engaged in any criminal conduct in the intervening 43 years." *Id*. at 38.

---

Supreme Court determined that "admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, . . ., be conceived of as harmless." *Chapman v. Cal.*, 386 U.S. 19, at 24-25 (1967).

[15] *See* footnote 6, *supra*.

Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.

In criminal cases where a defendant is accused of child molestation, pursuant to the Federal Rules of Evidence, "the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). The Ninth Circuit determined that Rule 414 does not violate constitutional due process rights, because it is subject to the requirements of Rule 403. *United States v. LeMay*, 260 F.3d 1018, 1022 (9th Cir. 2001). Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . .: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore,

> there is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414. As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded.

*LeMay*, 260 F.3d at 1026.

Under the California Evidence Code, in a criminal case where a defendant is accused of a sexual offense, "evidence of the defendant's commission of another sexual offense or offenses is

26

not made inadmissible . . ., if the evidence is not inadmissible pursuant to Section 352." Cal. Evid. Code § 1108. Section 352 states that a court may "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352.

The Ninth Circuit has stated that because California Evidence Code § 352 "establishes a similar threshold [as Federal Rule of Evidence 403] for [ ] propensity evidence," evidence admitted pursuant to California Evidence Code § 1108 does not violate due process. *Mejia v. Garcia*, 534 F.3d 1036, 1047, n.5 (9th Cir. 2008) (citing *LeMay*, 260 F.3d 1018). California Evidence Code § 352 establishes the same protections as Federal Rule of Evidence 403 to guard against the admission of evidence that is unduly prejudicial or of little probative value. California Evidence Code § 352, therefore, protects a defendant's right to a fair trial in the same manner as Federal Rule of Evidence 403. Because the trial court properly admitted the prior bad act evidence pursuant California Evidence Code § 352, Petitioner's due process rights were not violated. *Id*.

## VI. <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. at 335-36. The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending

removal proceedings.

> (c)　(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
>> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the undersigned concludes that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court recommends declining to issue a certificate of appealability.

**VII.　Conclusion and Recommendation**

Based on the foregoing, the undersigned recommends that the Court dismiss the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

1

2          These Findings and Recommendations will be submitted to the United States District

3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty**

4  **(30) days** after being served with these Findings and Recommendations, either party may file

5
    written objections with the Court.  The document should be captioned "Objections to Magistrate
6
    Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and
7
8  filed within **fourteen (14) days** after service of the objections.  The parties are advised that

9  failure to file objections within the specified time may constitute waiver of the right to appeal the

10  District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v.*

11
    *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).
12

13
    IT IS SO ORDERED.
14

15  Dated:   **January 24, 2018**                          /s/ *Sheila K. Oberto*
16                                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28